FORD'S INC., An Arkansas Corporation, et al.
*v.* RUSSELL BROWN & COMPANY

88-314                                                      773 S.W.2d 90

Supreme Court of Arkansas
Opinion delivered July 10, 1989

*Pickens & Watson,* by: *Fred M. Pickens*; and *Locke, Purnell, Rain & Harrell, A Professional Corporation,* for appellants.

*Friday, Eldredge & Clark,* by: *Robert K. Walsh,* for appellee.

DARRELL HICKMAN, Justice. This case involves the appellants' professional malpractice claim against appellee for its having given appellants erroneous tax advice. At trial, appellee moved for summary judgment on the grounds that the appellants' claim was barred by the three year statute of limitations set out in Ark. Code Ann. § 16-56-105 (1987). The trial court agreed that the claim was barred, adding even if appellants' allegations of fraudulent concealment were true under the facts of this case, the statute of limitations had run. We affirm.

The facts are essentially undisputed. In 1973, the appellants employed appellee to advise them on how to liquidate their business on a tax-free basis. Relying on appellee's advice, given in August 1974, appellants liquidated and distributed their company's assets. Appellee prepared the final tax return for the company (and some of the 1974 individual tax returns) reflecting a tax-free liquidation.

The Internal Revenue Service (IRS) commenced an audit of the appellants' returns in late 1976 or early 1977, and after several conferences and filing of protests, imposed additional taxes and interest, as a result of the liquidation, in the amount of $648,000 plus interest. The chronology of events, concerning the results from the IRS audit, began with appellants first being notified in January 1978 that they owed a tax deficiency. On September 8, 1978, appellee conceded that the IRS's position regarding the deficiency was at least partially correct and recommended that the appellants accept a proposed settlement. After October 26, 1978, the IRS assessed additional taxes and interest, and on September 4, 1981, appellants brought this suit against appellee for the damages incurred as a result of appellee's erroneous advice.

The central issue to be decided is whether the applicable three year limitation commences from August 1974, the date appellee gave the erroneous tax advice concerning liquidation, or from October 26, 1978, when appellants were actually assessed the deficiency amount which resulted from appellee's negligent conduct or advice. Obviously, appellants' action was filed timely only if the three year limitation commenced from the October 26, 1978, date; except for the September 8 and October 26, 1978, dates, all other relevant dates noted above were beyond the three year period from when appellants later filed suit on September 8, 1981.

Appellants point out that this court has never considered an accountant malpractice case or decided when the limitation period should start to run in such cases. In deciding the issue, appellants urge us to construe the limitation statute to commence from the date IRS gives its notice of an assessment of tax deficiency, and cite a number of other jurisdictions in support of their contention. *Cameron* v. *Montgomery*, 225 N.W.2d 154

(Iowa 1975); *Atkins v. Crosland*, 417 S.W.2d 150 (Tex. 1967); *see also, Moonie v. Lynch*, 256 Cal. App. 2d 361, 64 Cal. Rptr. 55 (1967); *Feldman v. Granger*, 255 Md. 288, 257 A.2d 421 (1969); *Chisholm v. Scott*, 86 N.M. 707, 526 P.2d 1300 (1974). In further support of their contention, appellants reason that, until they are assessed a tax deficiency, they have not sustained an injury, and they should not be obligated to file an action until liability is established.

First, we should note that appellants' reliance upon some of the cases they cite is misplaced. For example, in *Feldman*, the Maryland Court of Appeals considered Feldman's malpractice action against an accounting firm for the firm's late filing of a document with the IRS. The accounting firm contended that the limitation began to run on November 12, 1960, the day the taxpayer learned of the late filing, and Feldman argued the time commenced only when he sustained the deficiency assessment made by the IRS. Similar to the argument made by appellants in the present case, Feldman reasoned that no claim should accrue for the purpose of commencing the limitation statute until all events have occurred which fixed his liability and upon which he would file his suit. In adhering to the so-called discovery rule, the Maryland court rejected Feldman's claim and found that on July 22, 1964, he received notice of the tax deficiency, and the court determined that any reasonable and prudent man, being in Feldman's position, would have known, or should have known at that time, that he sustained legal harm as of that date, if not before. In short, the *Feldman* case actually rejected the argument that the limitation statute should commence only when the tax deficiency assessment was made.

The *Moonie* case, also relied on by appellants, fails to support the view which the appellants urge here. Although the California court concluded that the taxpayer had no way of knowing his tax return had been improperly prepared until the government assessed him a penalty, the court adopted the rule that in a malpractice action against an accountant, the statute of limitations does not run until the negligent act is discovered, or with reasonable diligence could have been discovered. In other words, the *Moonie* holding depended upon the same type analysis as the one relied on in *Feldman*.

Even if we adhered to the discovery rule in accounting malpractice actions, the record in the instant case reflects the appellants were first notified of a deficiency in January 1978. Thus, using the reasoning and holding in *Feldman*, it could be concluded that the appellants knew, or reasonably should have known, of appellee's negligent conduct by January 1978 — which was more than three years prior to the date the appellants filed suit.

■ Our decisions have settled this limitation question in professional malpractice actions, and our rule is considerably more restrictive than any of the cases cited and relied on by appellants. In Arkansas malpractice cases, concerning attorneys and physicians, we have consistently held that the statute of limitations begins to run, in the absence of concealment of the wrong, when the negligence occurs, not when it is discovered. *Stroud* v. *Ryan*, 297 Ark. 472, 763 S.W.2d 76 (1989); *Lane* v. *Lane*, 295 Ark. 671, 752 S.W.2d 25 (1988); *Riggs* v. *Thomas*, 283 Ark. 148, 671 S.W.2d 756 (1984). In fact, Arkansas courts have followed this rule, as it pertains to professional malpractice actions, for well over one hundred years. *See White* v. *Reagan*, 32 Ark. 281 (1877) (quoting from *Howell* v. *Young*, 5 Barn. & Cress. 259). That being so, we see no compelling reason why we should adopt a different rule to be used in accounting malpractice cases. Accordingly, since appellee's erroneous advice or negligent conduct occurred in August 1974, appellants' suit filed on September 8, 1981, was clearly beyond the three year limitation statute. We observed in *Riggs* v. *Thomas, supra*, that if such a marked change is to be made in statutes that have long been the law, it should be done by the legislature, not the courts.

■ Appellants also argue that even if the limitation statute commenced from the August 1974 date, appellee was guilty of fraudulent concealment which tolled the running of the statute. Although appellants now argue fraud, we note that they never alleged fraudulent concealment in their complaint. Even if appellants had asserted fraud, our review of the record reflects the only evidence from which one might infer concealment on appellee's part is when the parties met with the IRS in January 1977, and appellee defended its position and advised appellants they had nothing to worry about. Of course, any concealment attributed to appellee would have ended in September 1978,

when appellee conceded it had given appellants erroneous advice. Based upon these facts, the statute of limitations began to run in August 1974 and the appellants never brought suit until seven years later. Even if we deducted the period between January 1977 and September 1978 (the alleged period of concealment), the appellants' suit would still have been beyond the three year period required by the statute of limitations.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. The appellants employed the appellee to liquidate the family business in a manner which would cause the appellants to pay the least amount of taxes possible. The appellee came up with a tax-free return for calendar year 1974. However, the IRS commenced an audit of the returns in late 1976 or early 1977, which resulted in a request from the IRS to the appellants to pay $648,000.00 in taxes resulting from the liquidation of the business in 1974. The first notice of the deficiency was given in January, 1978.

The appellants contacted the appellee immediately after receiving the deficiency notice and were informed by appellee that the IRS was in error and not to worry about it. Up until September 8, 1978, the appellees insisted the appellants did not owe any taxes. On that date the appellee conceded that the IRS was correct and admitted the appellants owed money. Furthermore, they recommended that the appellants pay a proposed settlement. On October 26, 1978, the IRS made its assessment for the deficiency judgment.

I agree that this court has never before written an opinion concerning the statute of limitations for malpractice by accountants. In my opinion we should use common sense and ordinary reasoning power to establish the commencement of the three-year limitation period. In that case the earliest the statute would commence to run would be September 8, 1978. The appellants filed suit on September 4, 1981, which is clearly within the three-year limit up until September, 1978. The appellees defended their prior action and insisted the IRS was wrong. In fact the appellants had not been harmed until they received a demand for additional taxes. There was no way appellants should have or

could have learned, for that matter, that they would owe additional taxes.

The only fair and reasonable way to establish the statute of limitations is to use the date of September 8, 1978, because the appellees deliberately and intentionally covered the error or miscalculation up until that time. Justice demands no less.